SHANK *v.* PEOPLES STATE BANK.

[No. 15,241. Filed March 23, 1937. Rehearing denied October 15, 1937. Transfer denied December 17, 1937.]

*James Ingles, Isaac Carter* and *John Kendall,* for appellant.

*L. R. Zapf* and *Charles V. Sears,* for appellee.

LAYMON, J.—Appellant instituted this action to recover from appellee money paid out by appellee on checks drawn by the appellant upon the Peoples State Bank, appellee herein, made payable to the order of the Brownette Refrigeration Corporation and charged to appellant's deposit in said bank.

The complaint was in three paragraphs, each paragraph seeking recovery upon a separate check therein described. The allegations of each of said paragraphs were identical, except as to the description and contents of the checks, and each paragraph was predicated upon the theory that the indorsements on the checks were not the indorsements of the Brownette Refrigeration Corporation and were forgeries. To each paragraph of complaint the appellee filed a general denial and three para-

graphs of affirmative answer. Demurrers were sustained to the second and third paragraphs of answer, and the demurrer to the fourth paragraph was overruled. Said fourth paragraph alleged: "That all negotiations relative thereto were between plaintiff and one Walter C. Coates, without the knowledge, then or for a long period thereafter, of this defendant; that plaintiff knew and was informed by the said Coates that the said rights and privileges were then and there the property of the said Coates; that the said Coates then informed the said plaintiff that he intended to assign said rights and privileges to a corporation of which he was the principal officer, but had not done so; that without inquiry or making investigation of any nature, plaintiff carelessly and negligently issued a check on August 21, 1928, made payable to said corporation; that with said knowledge and without investigation or inquiry of any nature, and after an interim extending from August 21, 1928, to October 2, 1928, as to whether said assignment had in truth and fact been made, he issued his additional check to said alleged corporation and seven days later, still without investigation on his part, although several weeks had transpired, issued an additional check payable to said allegedly fictitious corporation; that in exchange for the proceeds of said checks, said plaintiff procured the rights and privileges sought to be purchased by him and that the purchase price thereof went to the true owner of the same and the party known by said plaintiff to be the owner of the same; that the acts complained of by plaintiff as done by this defendant, even if true, have in no manner resulted in any damage to said plaintiff; that the proceeds arising from the payment of said checks, and each of them, were paid to the true party in interest and to the party plaintiff intended should have the same; that said plaintiff is not threatened with a demand for the payment of the sum or sums

represented by said checks, and cannot be compelled to pay the same again; that he has lost nothing by any act as complained of, done or omitted by this defendant."

Appellant filed a reply in general denial to the fourth paragraph of answer. The cause was tried by the court without the intervention of a jury, and on a special finding of facts and conclusions of law by the court, judgment was rendered in favor of appellee. To each of the conclusions of law as found by the court the appellant duly excepted. Appellant filed a motion for a new trial, which motion was overruled. Appellant then prayed and perfected this appeal, assigning as errors: (1) That the court erred in overruling appellant's demurrer to the fourth paragraph of appellee's answer; (2) that the court erred in each conclusion of law on the facts found; (3) that the court erred in overruling appellant's motion for a new trial. The causes set out in appellant's motion for a new trial and properly presented are substantially: (1) That the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law; (3) that the court erred in the admission into evidence of Appellee's Exhibit A; and (4) that the court erred in admitting evidence of a certain conversation appellant had with one W. C. Coates.

In view of the fact that the exceptions to the conclusions of law and the demurrer to the appellee's fourth paragraph of affirmative answer present the same question in this appeal, it is not necessary to consider both, for the reason that the decision of one necessarily determines the other. *Goodwine* v. *Cadwallader* (1901), 158 Ind. 202, 61 N. E. 939. Therefore, we will determine the correctness of the conclusions of law which are properly assigned as error.

The facts found by the trial court are as follows:

"*First.* That the defendant, The Peoples State Bank,

was on the 21st day of August, 1928, and at all times since said date a corporation organized and existing under and by virtue of the laws of the State of Indiana, with their banking house and place of business located in the City of Indianapolis, Indiana; that on said August 21st and for some time prior and subsequent thereto the plaintiff, J. Walter Shank, was a depositor in said bank, having on hands in said bank in excess of $2,000.00.

"*Second.* That in the latter part of July, 1928, the plaintiff became acquainted with one Walter C. Coates, who after some negotiations entered into a contract with the said J. Walter Shank, which contract is attached hereto and made a part hereof and for certainty marked Exhibit 'A.'

"*Third.* That on the 21st day of August, 1928, the plaintiff executed his check under the name and style of J. W. Shank, payable to the Brownette Refrigeration Corporation in the sum of $500.00. This check was drawn on The Peoples State Bank, the defendant herein, was by them certified on August 23rd, 1928, endorsed Brownette Refrigeration Corporation by W. C. Coates and paid on August 23rd, 1928, by the Continental National Bank. This check was paid by The Peoples State Bank and charged to the account of the plaintiff on August 24th, 1928.

"*Fourth.* That on October 2nd, 1928, the plaintiff under the name and style of J. W. Shank drew his check upon the defendant in the sum of $500.00 payable to the order of the Brownette Refrigeration Corporation, which check was endorsed Brownette Refrigeration Corporation by W. C. Coates and John A. Noon. This check was presented to the Security Trust Company of Indianapolis and by it paid on October 4th, 1928, and was paid by the defendant bank on October 4th, 1928, and charged to the account of the plaintiff.

"*Fifth.* That on the 8th day of October, 1928, the plaintiff under the name and style of J. W. Shank drew his check on the defendant bank in the sum of $1,000.00 payable to the Brownette Refrigeration Corporation. This check was certified by the defendant bank on the 8th day of October, 1928, endorsed on the back by the plaintiff, 'Payment in full on contract with W. C. Coates,' also bearing the endorsement Brownette Refrigeration Corporation by W. C. C., was presented to the Continental National Bank and by it paid on October 9th, 1928, and paid by the defendant Bank on October 9th, 1928, and charged to the account of the plaintiff.

"*Sixth.* That each of the checks set forth and described in Findings Three, Four and Five were given by the plaintiff to the said Walter C. Coates in person and in conformity with and pursuant to the terms and conditions of the contract set forth in Finding Number Two and in payment of the rights therein purchased and described. That an additional payment of $500.00 was made on October 8th by a check drawn on another bank in Indianapolis to complete the balance of the $2,000.00 mentioned and described as the payment due on October 1st, 1928, in the aforesaid contract.

"*Seventh.* That subsequent to the 8th day of October, 1928, the plaintiff went to the State of California for the purposes of perfecting a sales organization with which to promote the sale of the refrigeration machines in said contract mentioned and described. That said plaintiff remained in California until near Christmas of 1928 when he returned to Indianapolis and during his stay in California no refrigerating machines were sent to him by the said Walter C. Coates or the Brownette Refrigeration Corporation nor any other company.

"*Eighth.* That at all times prior to and including October 8th, 1928, the plaintiff in his negotiations with the said Walter C. Coates had been informed and be-

lieved that the Brownette Refrigeration Corporation was a duly organized and existing corporation under and by virtue of the laws of the State of Delaware. That he had been so informed by Mr. Coates, who also informed him that he, the said Coates, was President of said corporation. The said Coates further informed the plaintiff that one R. E. Schurtz of Kansas City, Missouri, was the owner of certain patent rights involved in the construction of said refrigeration machines and that the said Coates had a contract with said Schurtz whereby the Brownette Refrigeration Corporation was to have the right to manufacture and sell said patented machines. This information was also confirmed by Mr. R. E. Schurtz to this plaintiff.

"*Ninth.* That prior to October 8th, 1928, the said Walter C. Coates, R. E. Schurtz and this plaintiff went to Dayton, Ohio, and there examined the plant and equipment of the Variety Manufacturing Company, which Company the plaintiff was informed by the said Coates had the contract to build and manufacture said refrigeration machines for the Brownette Refrigeration Corporation.

"*Tenth.* That the plaintiff made the checks set out and described in Findings Three, Four and Five payable to the order of the Brownette Refrigeration Corporation at the suggestion and under the direction of the said Walter C. Coates and said checks were delivered by the plaintiff to the said Walter C. Coates in payment and discharge of the obligations set out and described in the contract heretofore set forth in Finding Number Two.

"*Eleventh.* That in truth and in fact there never was a corporation organized or in existence known as the Brownette Refrigeration Corporation, nor such as was represented and described by the said Walter C. Coates, which fact did not become known to the plaintiff until early in January, 1929. That the plaintiff on learning

such fact remonstrated with the said W. C. Coates and was then assured by the said Coates that the organization of the corporation would be perfected and that the contract mentioned in Finding Number Two could and would be carried out by not later than April 25th, 1929. That the said Walter C. Coates died in March or April, 1929, and no part of said contract was ever performed by the said Walter C. Coates.

"*Twelfth.* That on the 28th day of January, 1930, the plaintiff made demand upon the defendant for the payment of the $2,000.00 represented by the checks set forth and described in Findings Three, Four and Five herein, which demand was by the defendant refused and no part of the said $2,000.00 represented by said checks described in Findings Three, Four and Five herein has been returned or repaid to the plaintiff by the defendant or by the said Walter C. Coates.

"*Thirteenth.* That the check for $500.00 dated August 21, 1928, described in Finding Number Three and the check dated October 8, 1928, in the sum of $1,000.00, described in Finding Number Five, were each certified by said defendant bank at the request of the said Walter C. Coates and not at the request of the plaintiff.

"*Fourteenth.* That at the time of the delivery of said checks described in Findings Number Three, Four and Five, by the plaintiff to the said Walter C. Coates the said plaintiff intended to pay and discharge the obligations due and owing by him to the said Walter C. Coates as described in the contract referred to in Finding Number Two, and the plaintiff knew at the time of the delivery of said checks to the said Walter C. Coates that the said Walter C. Coates would present them to the defendant for payment and receive the money thereon."

The trial court incorporated Exhibit A in its findings, but we have not set out this exhibit in copying the findings, due to the fact that said exhibit is evidence and

not a statement of an ultimate fact. *Talbott* v. *English* (1901), 156 Ind. 299, 59 N. E. 857.

We deem it unnecessary to set out in detail all of the evidentiary facts in order to decide the questions presented, but do desire to point out: That sometime prior to August 21, 1928, the appellant entered into certain negotiations with Coates, who represented, among other things, that he, Coates, was the sole owner of the right to manufacture or cause to be manufactured and marketed throughout the United States a certain refrigeration unit and that he could grant the exclusive right to market the unit in the state of California. These negotiations led to the execution of a written contract under date of August 22, 1928. This contract was admitted in evidence as Appellee's Exhibit A and reads as follows:

## "DISTRIBUTOR CONTRACT

"This contract made and entered into at Indianapolis, Indiana, this twenty-second day of August, 1928, by and between Walter C. Coates, first party, and J. W. Shank, second party.

"Second party contracts for and does hereby purchase from first party Refrigeration Units built upon and under the Schurtz patents, F. O. B. factory and in values as follows: Domestic Units to the value of ($150,000) One Hundred and Fifty Thousand Dollars and Showcase and packer units for commercial use to the value of ($100,000) One Hundred Thousand Dollars, making a total purchase of the value of ($250,000) Two Hundred and Fifty Thousand Dollars. Said purchase prices to be at a discount of forty per cent (40%) off regular list prices.

"First party hereby accepts above order for Refrigeration Units and upon the terms above set forth and upon the terms and the conditions as here and after set

452

forth and further agrees to supply second party and to make or have made the shipments of all Refrigeration Units herein purchased. First party hereby grants to Second party the exclusive right to market said Refrigeration Units in the following described territory:

"The state of California.

"In compliance with the terms of sale of first party and as a guarantee that his obligations all and singular under this contract shall be truly and promptly met second party agrees to pay to first party and does herewith pay to first party the sum of ($500) Five hundred dollars, the receipt of which is hereby acknowledged and the sum of ($2,000) Two thousand dollars on October 1, 1928, and which sums are to apply as part payment at the rate of 1% on all Refrigeration Units shipped under this contract until said total of ($2,500) Twenty-five hundred dollars is so fully applied. The balance to be paid upon shipments of units to second party, sight draft with bill of lading attached.

"Second party hereby orders Refrigeration Units of the within purchase to the value of ($41,667) Forty-one thousand, six hundred and sixty-seven dollars to be shipped during the month of January, 1929, or all or any part thereof prior to that date by making an arrangement to that effect with first party. The balance of said total purchase of ($250,000) Two hundred and fifty thousand dollars to be made in five equal shipments each within sixty-day periods of time and commencing with March 1, 1929. It is agreed however that it shall be optional with second party to order for January shipment Refrigeration Units to the amount of one-twelfth of said ($250,000) purchase and the remaining eleven-twelfths during the balance of the year in monthly shipments of one-twelfth the total amount, it being fully understood and agreed that all units ordered herein must be included in these shipments and that said ship-

ments shall all be made within a period of one year from January 1, 1929. This contract shall be subject to renewal from year to year at the option of second party for a period of five years commencing January 1, 1929, upon the same terms and conditions unless otherwise arranged by mutual agreement and for the protection of both parties hereto it is agreed and understood that if for any reason and prior to October 1, 1928, first party should have reason to believe that unusual delay would occur in production and shipment he shall have the right or option to refund with interest the second party all sums paid by second party under this contract prior thereto or with the consent of second party make other arrangements to cover said delay.

"It is a part of this contract and specifically agreed that failure of second party to order shipped and to pay for the Refrigeration Units as herein provided or his selling or offering of sale or allowing or causing to be sold in any territory other than set forth herein, any of the Refrigeration Units herein purchased, shall at the option of first party be declared a breach of contract and in such event or in case of any default or other breach of contract by second party, it shall be optional with first party to cancel the contract and in such event any sums advanced hereunder by second party as partial payment shall be forfeited by second party and retained by first party as liquidated damages and all rights and privileges of second party hereunder shall cease and this contract shall become null and void.

"Witness our hands and seals this day and date aforesaid.

    "WALTER C. COATES,      "J. W. SHANK,
        "First Party.            "Second party.

               "Witnesses

  "Charles Buck          "John A. Noon.

"An addition to or Supplement to the attached Contract bearing date of August twenty-second between W. C. Coates, First Party, and J. W. Shank, Second Party, and hereby made part and parcel of that contract by the mutual agreement of the parties thereto.

"It is understood and agreed that the First Party hereby grants to the second party an extension of time to in shipping dates, under said contract above referred to. This extension shall change said shipping dates under said contract to read and begin in and during the month of April, 1929, instead of January, 1929, as originally set forth in said contract.

"It is further agreed by and between the parties to the said contract hereinabove referred to that this contract shall be renewable at the option of the second party from year to year commencing January 1, 1929, instead of merely for a period of five years. This change is also inserted by mutual agreement of the parties.

"It is further agreed and understood between the parties to the above referred to contract that the payments to be made by the second party hereunder shall be as follows: Five Hundred Dollars ($500) on the twenty-second day of August 1928, Five Hundred Dollars ($500) on the second day of October, 1928, and the payment of Fifteen Hundred Dollars ($1,500) on or before the fifteenth day of October, 1928, provided, however, that this payment need not be made by the said party of the second part if the said party of the first part does not on or before the above date, that is, the fifteenth day of October, 1928, have a contract with a reliable manufacturing concern for the production of units of refrigeration under the Schurtz patents which said party of the first part controls. Such payment of Fifteen Hundred Dollars ($1,500) to be made, however, immediately upon the signing and execution and pro-

duction of the same to the party of the second part by said party of the first part.

"In witness whereof the parties hereto have hereunto set their hands this second day of October, 1928.

"W. C. COATES,

"Party of the First Part.

"J. W. SHANK,

"Party of the Second Part.

"Witness

"Leo M. Gardner."

In compliance with the terms and provisions of the contract dated August 22, 1928, appellant executed and delivered to Coates his check in the sum of $500, dated August 21, 1928, payable to the order of Brownette Refrigeration Corp., at the Peoples State Bank, appellee herein. This check is set out in appellant's first paragraph of complaint and is one of the checks involved in this appeal. The time of making the payments, as specified in said written contract above set out, was extended by an additional and subsequent written contract between appellant and Coates under date of October 2, 1928. This second and subsequent contract was executed by appellant as party of the second part and Coates as party of the first part. In compliance with the terms and provisions of said contracts, appellant delivered to Coates his check for $500 under date of October 2, 1928, payable to the order of the Brownette Refrigeration Corporation. This check is also one of the checks involved in this appeal. An additional check in the amount of $500, for which recovery has not been sought in this action, was drawn on another bank and delivered to Coates in accordance with the provisions of these contracts. Pursuant to the terms and provisions of said written contracts appellant delivered to Coates his check under date of October 8, 1928, in the sum of $1,000,

payable to the order of the Brownette Refrigeration Corp., and drawn upon appellee. Said check is one of the three checks involved in this appeal. According to the testimony of appellant this check was indorsed as follows: "Payment in full on contract with W. C. Coates." Appellant testified that this indorsement was in his handwriting and had by him been placed on the check at the time he delivered the final check to Coates. Each of the three checks involved was indorsed as follows: "Brownette Refrigeration Corp. By W. C. Coates." At the time of drawing and delivering the check first above referred to, which check was executed on August 22, 1928, appellant inquired of Coates how he desired to have the check drawn, to which inquiry Coates replied substantially as follows: "To the Brownette Refrigeration Corporation I am acting as president for the corporation and while my contract has been drawn with you, it was due to the fact that I have not turned over to the corporation my contract with the inventor." All of the checks were given, cashed, and charged to appellant's deposit which he had with appellee. The evidence is undisputed and supports the court's finding that there was no such corporation organized or in existence known as the Brownette Refrigeration Corporation. One of the checks in question bore the additional indorsement of one John A. Noon. Appellant testified that he accompanied Coates to the bank and identified him so that he could get the money on the $500 check, for which recovery has not been sought in this action, but which check has heretofore been referred to as being given pursuant to the terms and conditions of the written contracts between appellant and Coates. Appellant also testified that he accompanied said Noon to the bank with one of the checks involved in this appeal and identified him so that he could cash the check.

Appellant contends that the three checks involved in

this appeal were made payable to the Brownette Refrigeration Corp., as payee; that the checks were drawn upon the bank of appellee and were cashed and the sums therein specified charged to appellant's account by appellee without the endorsement of the Brownette Refrigeration Corporation, payee; that the indorsement on each of the checks was not the indorsement of the payee and that appellee paid them at its peril. Citing the case of *Citizens Nat. Bank* v. *Reynolds* (1920), 72 Ind. App. 611, 615, 126 N. E. 234, wherein the court said:

"The rule is well established that a bank on which a check is drawn must ascertain at its peril the identity of the person named therein as payee. *Harmon* v. *Old Detroit Nat. Bank* (1908), 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. 467; 2 Bolles, Banking, 614. Where a check is presented for payment by a person who is unknown to the bank, it becomes the imperative duty of the bank to require him properly to identify himself as the payee named in the check. For its own protection the bank may go further. It may refuse payment until the stranger brings in a person whom the bank knows to be financially responsible and who is willing to become an indorser."

Appellee contends, however, that it is not liable for the proceeds of checks paid on irregular indorsements, where the amounts actually reached the persons entitled to them and where the amounts actually reached the persons to whom the sums were payable and to whom the drawer intended they should go.

It is true that appellant drew each of said checks payable to the order of an express payee and that this payee subsequently was found to be a fictitious corporation never having a corporate existence. Nevertheless, these checks were delivered by appellant to Coates, with whom he not only was negotiating his business transactions, but to whom he made payments of his obligations pursuant to the terms and provisions of written contracts executed by appellant and Coates in

their individual capacity, wherein appellant became obligated to pay the sums evidenced by said checks to Coates individually, and under which contracts the payments were to be made to Coates individually for certain rights and privileges which Coates was granting to appellant, and each of said checks was actually indorsed by Coates.

The principal question involved in this appeal is not whether the indorsement was valid or a forgery, but, conceding that the indorsement was irregular, whether there was any liability on the part of the bank arising therefrom. It is certainly true and fundamentally correct that litigants can avail themselves in cases of their wrongdoings by showing that no harm resulted therefrom. It would be a travesty of justice to forbid a litigant from showing and establishing as a defense that no harm or damages resulted from an irregular or unlawful act. We think, in this case, that there was ample evidence to support the finding of the court that at the time of the delivery of each of said checks in question by appellant to Coates, appellant intended to pay and discharge the obligations due and owing by him to the said Coates, as described in the written contracts between appellant and Coates, which contracts have heretofore been referred to; that appellant knew at the time of the delivery of said checks to Coates that Coates would present them for payment and receive the money thereon; and that the amounts actually reached the person entitled to them and to whom the sums were payable.

In the case of *Meridian Nat'l Bank of Indianapolis* v. *First Nat'l Bank of Shelbyville* (1893), 7 Ind. App. 322, 329, 33 N. E. 247, the court said: "The check was intended for a person, not a name. Names possess neither personality nor existence. They but serve to identify individuals. The check was received by the identical per-

son or individual to whom its drawer intended to deliver it, and was by that person indorsed in the name in which it was issued to him."

In the instant case we are not confined to the express payee of the checks in determining whom the appellant intended as the real payee or recipient of the funds evidenced by the checks. Evidence was properly admitted by the trial court to show whom the appellant intended to be the real payee and who he intended to receive the funds from said checks drawn by him. We conclude that there was ample evidence to sustain the lower court in its finding that the amounts specified in the checks involved in this appeal actually reached the person entitled to them and the person to whom the sums were payable and to whom the drawer intended they should go, and appellant was not harmed thereby.

Appellant complains of error in the admission into evidence of appellee's Exhibit A, being the written contracts above referred to executed between appellant and Coates. This exhibit was competent evidence for two reasons. First, appellant testified on direct examination that the checks were delivered to Coates, upon one of which checks appellant wrote "Payment in full on contract with W. C. Coates," and appellant identified a letter on his behalf to appellee referring to negotiations which appellant had with Coates. Therefore, this exhibit was germane to the evidence elicited by appellant on direct examination. Second, it was competent on the question of the intention of appellant, as to whom he intended the proceeds of the check to be paid.

Appellant further complains of the admission into evidence of a certain conversation between appellant and Coates concerning the payment of the checks involved, because the conversation occurred long after the checks were paid. This evidence was

elicited upon the cross-examination of appellant and was proper within the discretion of the court as affecting the credibility of the witness.

The court did not err in the conclusions of law or in overruling appellant's motion for a new trial.

Judgment affirmed.