## KUSHELEWITZ et al. v. NATIONAL CITY BANK OF NEW YORK.

## NATIONAL CITY BANK OF NEW YORK v. FEDERAL RESERVE BANK OF NEW YORK.

### No. 169, Docket 22524.

United States Court of Appeals Second Circuit.

Argued Feb. 5, 1953.

Decided March 4, 1953.

On motions for summary judgment by plaintiffs and defendants, the undisputed facts were as follows:

Philip Cassell is one of the partners plaintiffs in this suit. Adams, President of Richard Dye Works, Inc., and the plaintiff Cassell, knew each other for some eleven years. They called each other by their first names. Both had been in the textile business for many years. In March 1950, Cassell learned from a mutual friend that Adams was going into the textile business on his own. Cassell "contacted" Adams to purchase "remnants." Adams told Cassell that he was going to start in business soon and Cassell replied, "You will be starting soon and I will come up to see you." In February or March, 1950, Adams consulted an attorney and paid him $125. to organize a corporation for him to be known as Richard Dye Works, Inc. Adams received from his lawyer a stock certificate and the corporate seal of the "corporation," bearing the imprint "Richard Dye Works, Inc." Adams, as sole "stockholder," invested $25,-000 in his business and, believing he was the "president," acted as such.

During the Spring of 1950 Adams organized a textile plant in Jermyn, Pennsylvania, which he operated as "Richard Dye Works, Inc." The business was in operation for approximately five months, from June, 1950, to October or November, 1950. It had a plant building and office building known as "Richard Dye Works, Inc." Adams and his business enterprise leased property in the name of "Richard Dye Works, Inc." In that name he hired and paid as many as sixteen employees and took out workmen's compensation insurance. "Richard Dye Works, Inc." opened an account in the First National Bank of Jermyn, Pennsylvania, and made many deposits and withdrawals in the account. Adams was the sole person authorized to sign checks. That these business operations were all conducted under the name of "Richard Dye Works, Inc.", was known to the plaintiff Cassell who had visited the plant on two occasions.

On September 15, 1950, he made one of these visits to learn if Adams "had job lots to buy." Cassell saw the plant, machinery and workers. Adams informed the plaintiff that he needed "some cash" because he had "just started" and was a "little bit exhausted." Cassell agreed to help him out. As a result of the negotia-

tions, a contract was entered into whereby plaintiffs agreed to loan $1500. for the exclusive rights to "remnants." At the conference there was a conversation between Adams and Cassell as to the payee of the check and Adams told Cassell to make it payable to the company. Cassell then gave Adams a check for $1500. made payable to "Richard Dye Works, Inc." At the same time a promissory note payable to plaintiffs was executed. Cassell asked Adams to sign and endorse the note in his personal capacity; this Adams agreed to do and did. Adams told plaintiff Cassell that the money was going to be used for the business.

The check was deposited and credited in the account of "Richard Dye Works, Inc." in the First National Bank of Jermyn, Pennsylvania, which guaranteed prior endorsements. The check was forwarded to the Federal Reserve Bank of New York and then to the defendant National City Bank for collection. That bank charged the amount of the check to plaintiff's account. The proceeds were used exclusively for the purposes of the business.

Unknown to Adams, and unknown to the plaintiffs, the Jermyn Bank, and the other parties, "Richard Dye Works, Inc.," was not a corporation since, as a result of an oversight by Adams' lawyer, it had not been incorporated.

About six weeks after the loan, the business enterprise failed. Adams lost his $25,000 investment, and the plaintiffs sustained a $1500 loss on the loan. When, later, plaintiffs learned that "Richard Dye Works, Inc.," had not been incorporated, they instituted suit on March 28, 1951, against the defendant drawee bank. Defendant impleaded the Federal Reserve Bank of New York on its guarantee. Plaintiffs did not sue Adams to recoup their loss. It was not until after the institution of the instant suit that Adams learned that there was no corporation.

The district court entered summary judgment for plaintiffs.

Kurach & Cassell, New York City (Irwin Cassell, New York City, of counsel), for plaintiffs-appellees.

Shearman & Sterling & Wright, New York City (Charles C. Parlin, Jr., New York City, of counsel), for defendant-appellant.

Lorenz, Finn & Nobiletti, New York City (Alfred Giardino, New York City, of counsel), for third-party defendant-appellant.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Not only was no fraud involved, but the money was applied precisely as plaintiffs intended. Adams had asked Cassell if "he could advance me" [Adams] some money to be used for the business conducted under the corporate name, Adams being the sole owner of the business. Adams told Cassell to make his check payable to "Richard Dye Works, Inc." The promissory note received by plaintiffs for this loan was signed "Richard Dye Works, Inc.," and, at Cassell's request, was endorsed by Adams. The proceeds of the check were used exclusively for the purposes of the business conducted by Adams under the corporate name. Adams, in good faith, thought the corporation existed. Not until after plaintiffs began the present suit, did Adams learn that, by an oversight, his attorney had failed to complete the incorporation. In no conceivable way did plaintiff suffer any harm because of the absence of a corporation or the honoring of the check. The fact that Adams, not the supposed corporation, received the money was of no importance to plaintiffs. The corporate name was but a way of designating the business enterprise conducted by Adams; and it was to that enterprise that plaintiffs desired the money paid. The facts here are unlike those in the cases, cited by plaintiffs, which, in one way or another, involved some fraud or the like.

All parties agree that Pennsylvania "law" governs. We have found no Pennsylvania decisions squarely in point. But remarks in cases decided by the highest court of the state, dealing with the general subject, convince us that it would hold that, in cir-

590

cumstances like those before us here, plaintiff could not recover.[1]

Reversed and remanded to the district court with directions to enter judgment dismissing the plaintiff's complaint against the National City Bank and dismissing the complaint of the National City Bank against the third-party defendant, the Federal Reserve Bank.

1. See, e. g., Land Title & Trust Co. v. Northwestern National Bank, 196 Pa. 230, 234, 236-237, 46 A. 420, 50 L.R.A. 75; Commonwealth v. Globe Indemnity Co., 323 Pa. 261, 269, 185 A. 796.

See also Shank v. Peoples State Bank, 104 Ind.App. 443, 7 N.E.2d 46, 51-52; cf. dictum in Callaway v. Hamilton National Bank, 90 U.S.App.D.C. 228, 195 F.2d 556, 563.